BERTHA WATKINS, PLAINTIFF-RESPONDENT, v. E. HERMAN FEINBERG, DEFENDANT-APPELLANT.

Submitted October 7, 1941—Decided February 4, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and HEHER.

For the appellant, *Wilbur A. Stevens* (*William Wann,* of counsel).

For the respondents, *Abraham L. Motolinsky* (*Edmund A. Hayes,* of counsel).

The opinion of the court was delivered by

HEHER, J. This is an action by a tenant for damages ensuing from the landlord's breach of an asserted undertaking to repair the premises. The jury empanelled to try the issue returned a verdict for the tenant; and the landlord appeals from the consequent judgment.

It is assigned for error that the trial judge denied the landlord's motion for the direction of a verdict in his favor on the ground, generally, that there was an utter lack of proof of the pleaded contractual duty to repair. The assignment is not well-grounded.

These are the essential facts: Defendant purchased the premises—a single family dwelling house—in June, 1939. Plaintiff was then in possession under a tenancy from month to month created by contract with the prior owner. There was evidence tending to show that immediately after defendant took title to the lands, he and the plaintiff conferred respecting a continuance of the tenancy; that plaintiff informed defendant that the house was "in very bad condition," and she would not continue the tenancy unless it was "fixed up;" that defendant agreed that if plaintiff would "stay in this house" at the stipulated monthly rental, he would "fix this house, paint it inside, outside, fix the sidewalks * * *;" and that plaintiff unconditionally accepted the proposal, and continued in possession of the premises on those terms until the mishap occurred. Sometime in the year 1939, a small portion of the ceiling of one of the bedrooms fell. Plaintiff called the matter to the attention of defendant; and, after an inspection, the latter said: "Never mind that. I will fix it." He did not do so; and, on March 16th, 1940, the remainder of the ceiling fell and caused the injury for which this action was brought. Defendant had been a building contractor for some fourteen years; and he admitted that the fall of the ceiling was due to the fact that "the keys had parted from the lath," and that an inspection would have disclosed the parting of the keys to one of his experience. He conceded that "from the very outset"—"from the very day that she made the agreement with" him "to stay as a tenant"—plaintiff "had complained many times" about the condition of the house, and had asked him to make all needed repairs; and that "on the occasion" when "she agreed to continue in possession" of the lands as his tenant, "she had asked" him "to fix up plaster work where there were cracks on the walls and ceilings of the house in different places."

Thus it is that there was a substantial basis in the evidence

for the jury's finding that, under the tenancy contract between plaintiff and defendant, the latter obligated himself to repair the premises, and that plaintiff's injury was the natural and proximate result of his default in the performance of the undertaking. Compare *Granato* v. *Howard Savings Institution*, 120 *N. J. L.* 94; *Folley* v. *United Building and Loan Association*, 117 *Id.* 54; *Rosenberg* v. *Krinick*, 116 *Id.* 597; *Harenburg* v. *August*, 119 *Id.* 83; *Williams* v. *Fenster*, 103 *Id.* 566.

There is no occasion to determine whether a continuing duty to keep the premises in repair arose out of the agreement thus made. It suffices that the contract laid upon the landlord the duty of making such repairs to the structure as were then necessary, and thus invested him with full control thereof, and that the evidence gives rise to the inference that he did not exercise reasonable care in the discharge of the obligation. It was fairly deducible that if the duty so measured had been satisfied, the injury would not have been sustained. The condition of disrepair which produced the harm is comprehended in defendant's undertaking to "fix" the "house," exacted by plaintiff as a condition to the continuance of the tenancy.

But the contention is made that there was no consideration for this promise, and it therefore takes the category of a *nudum pactum*. This is grounded in the hypothesis that "the mere acquisition by" defendant "of the property did not constitute a new letting." The point is not well taken.

The tenant was not bound to continue the tenancy; it was terminable on a month's notice; and the consideration for the landlord's promise to make such repairs as were then necessary, if it be so narrowed, was the continuance of the tenancy. Compare *Coast National Bank* v. *Bloom*, 113 *N. J. L.* 597; *Levine* v. *Blumenthal*, 117 *Id.* 23; *affirmed*, *Id.* 426.

And the question of the voluntary assumption of the risk was peculiarly one for the jury. After a portion of the ceiling had fallen, the tenant was assured by the landlord that he would make the needed repairs; and she continued in possession on the assumption that the landlord's contractual

undertaking, then reiterated, would be fulfilled. In the circumstances, it was for the triers of the facts to determine whether the tenant appreciated and voluntarily assumed the risk of danger. The parties were not on the same footing. Defendant was skilled in construction work, and understood the hazard, while plaintiff was without such knowledge.

Judgment affirmed, with costs.